UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TUMA A. BARKHO,

        Plaintiff,

v.

HOMECOMINGS FINANCIAL, LLC,

        Defendant.

Case No. 09-12163
Honorable Julian Abele Cook, Jr.

ORDER

On April 30, 2009, the Plaintiff, Tuma A. Barkho, filed a complaint in the Macomb County Circuit Court of Michigan against the Defendant, Homecomings Financial, LLC, seeking relief from a mortgage loan transaction that occurred during the financing his home at 4570 Brown Drive in Warren, Michigan.[1]

On June 3, 2009, the Defendant caused the state court action to be removed to this federal

---

[1] The Plaintiff, in his complaint, assigned the following topics to his complaint: Count One [Accounting]; Count Two [Violation of 15 U.S.C. § 1639, commonly known as the "Home Ownership and Equity Protection Act "]; Count Three [Predatory Lending]; Count Four [Violation of 15 U.S.C. § 1601 *et seq.,* commonly known as the "Truth in Lending Act"]; Count Five [Fraudulent Misrepresentation]; Count Six [ Negligent Misrepresentation]; Count Seven [Defamation of Credit/ Violation of [the] "Fair Credit Reporting Act"]; Count Eight [Recision of Notes and Mortgages]; Count Nine [Reformation of Notes and Mortgages]; Count Ten [Violation of Mich. Comp. Laws § 445.1651 *et seq.,* more commonly known as the "Mortgage Brokers, Lenders, and Servicers Licensing Act"]; Count Eleven [Violation of Mich. Comp. Laws § 438.31 *et seq.*, more commonly known as the "Usury/ Violation of Usury Act"]; and Count Twelve [Temporary Restraining Order/ Preliminary Injunction].

1

district court, alleging that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.[2] On June 10th, the Defendant filed a motion for dismissal pursuant to Fed. R. Civ. P. 12(b)(6)[3] which is opposed by the Plaintiff.

For all of the reasons that have been stated below, the Defendant's motion is granted.

I.

The Plaintiff is a citizen of the State of Michigan who resides in the City of Warren. The Defendant is a for-profit corporation that provides mortgage lending and servicing in Michigan and elsewhere in the United States.

In 2006, the Plaintiff contacted a real estate company, known commercially as Keller - Williams, in order to locate a new home for his family. Thereafter, Keller -Williams located a seller, and submitted the necessary documentation to the Defendant for the financing of the sale of the Brown Drive home. In his complaint, the Plaintiff maintains that the Defendant grossly overstated his monthly income in an effort to get him qualified for a loan that he could not afford. Moreover, the Plaintiff asserts that Keller-Williams orally promised to refinance his loan if his mortgage payments became "problematic."

It is the Plaintiff's belief that these alleged misrepresentations were part of a larger scheme by Keller-Williams, as well as the Defendant, to defraud him and other prospective borrowers. He contends that the Defendant knew, or should have known, that there was a high likelihood of a default on his loan on the basis of its underwriting practices and the unsustainable housing price

---

[2] 28 U.S.C § 1331 states that "The district courts shall have original jurisdiction of all civil actions arising under this Constitution, laws, or treaties of the United States."

[3] Fed. R. Civ. P. 12(b)(6) authorizes the dismissal of claims when a party has "fail[ed] to state a claim upon which relief can be granted."

increases in Michigan. Although the Plaintiff remained current on his loan payments for an extended period of time,[4] he has since fallen in arrears on them.

As a result of the Defendant's allegedly fraudulent lending practices, as well as his inability to refinance or sell the Brown Drive property due to a nationwide depreciation in property values, the Plaintiff contends that his house is near foreclosure status. Furthermore, he proclaims that he owes significantly more on his mortgage than the Brown Drive property could be sold for on the open market. Thus, the Plaintiff asks this Court to enter an order that would (1) prevent a foreclosure sale, and (2) enter an award of damages in his favor which would compensate him for the Defendant's misrepresentations.

II.

In its motion for dismissal, the Defendant contends that none of the Plaintiff's twelve counts state a claim upon which relief can be granted. According to the Defendant, Counts Two and Four are barred by the applicable statute of limitations. The Defendant also maintains that Counts Five, Six and Ten are legally deficient because the Plaintiff expressly acknowledged that the income as reported on his application material was accurate. Finally, in addressing the remaining seven claims, the Defendant contends that an order of dismissal is appropriate because none of them are recognized by law or are based upon legal principles that are not applicable to the Plaintiff's claims.

In response, the Plaintiff rejects the Defendant's statute of limitations arguments, proclaiming that none of them began to run until after the violations are uncovered by him. As to the allegations which sound in fraud, the Plaintiff now argues fraud in the inducement when he was

---

[4]The record is unclear as to how long the Plaintiff remained current with the payments on his mortgage. However, it should be noted that this complaint was filed approximately two and a half years following the completion of his mortgage loan.

3

allegedly coerced into signing the application documents which misrepresented his income. Finally, the Plaintiff makes no material response to the remaining seven claims about which the Defendant seeks to have dismissed.

III.    The Defendant brings this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for "failure to state a claim upon which relief can be granted." Under Fed R. Civ. P. 8(a)(2), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief [in order to] give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) and Fed. R. Civ. P. 8(a)(2)). While this notice pleading standard does not mandate "detailed" factual allegations, it does require more than the bare assertion of legal conclusions. *See Twombly*, 550 U.S. at 555. Therefore, this Federal Rule of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S._ , 129 S.Ct. 1937, 1949 (2009).

Generally, when considering a motion to dismiss, the Court must construe the complaint in a light that is most favorable to the plaintiff, accept the plaintiff's factual allegations as true, and draw all reasonable factual inferences in the plaintiff's favor. *Tipton v. Corr. Med. Services, Inc.* 2009 WL 2135226. (W.D. Mich. 2009). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 129 S.Ct. at 1949 (*quoting Twombly*, 550 U.S. at 555). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Claims are capable of surviving a Rule 12(b)(6) motion only if the "factual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all [of] the allegations in the complaint are true."

4

*Twombly*, 550 U.S. at 555.

As emphasized by the recent Supreme Court decision in *Iqbal,* a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is "plausible" on its face:

> "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (2)) (internal citations omitted).

Therefore, in evaluating the Plaintiff's claims against the Defendant's motion for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the Court is guided by the standard formulated under *Iqbal*.

IV.

The Court will begin by addressing the Defendant's contention that the Plaintiff's claims under the Truth in Lending Act, and Home Ownership and Equity Protection Act are time barred by the statute of limitations.[5] According to 15 U.S.C. § 1640(e), "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." Although the instant suit was filed well over two years after the loan was executed, the Plaintiff submits that these claims should not be subjected to the one year provision because the period of limitations does not commence until after the violation is discovered.

In support of this proposition, the Plaintiff cites to a Ninth Circuit of Appeals case which he characterizes as being representative of his position on this issue. *Meyer v. Ameriquest Mortgage*

---

[5]For reasons of efficiency and clarity, the Court will analyze this motion under the same organizational structure as found in the Defendant's motion.

*Co.,* 342 F.3d 899, 902 (9th Cir. 2003). However, while the court in *Meyer* recognized that there is some debate as to when the period of limitations commences, it stops short of answering the question directly. The court stated "[b]ut we need not decide this question here, because even under the more expansive Don Burgess rule, the one-year period has run." *Id.* at 902 (citing *Katz v. Bank of Cal.*, 640 F.2d 1024, 1025 (9th Cir.1981)). In addition, not only has the Plaintiff seriously mischaracterized the holding in *Meyer,* he also cites to a Sixth Circuit Court of Appeals case which affirmatively supports the commencement of the one year provision on the date that the loan is executed. There, the court declared "that a credit transaction which requires disclosures under the Act is completed when the lender and borrower contract for the extension of credit . . . If the disclosures are not made, this violation of the Act occurs, at the latest, when the parties perform their contract." *Wachtel v. West,* 476 F.2d 1062, 1065 (6th Cir. 1973).

Finally, while the one year provision may be tolled in some cases of fraudulent concealment, the Plaintiff has failed to present any argument in his brief that would allow the Court to consider this issue. As such, the Court is compelled to dismiss claims Counts Two and Four of the complaint, as both of them are time barred by the applicable statute of limitations.

Next, the Defendant avers that the Plaintiff's claims in Counts Five, Six, and Ten which sound in fraud should be dismissed as well. In Michigan, an aggrieved party must establish the following elements to support a claim of fraudulent misrepresentation:

> (1) that the defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.
>
> *Hi-Way Motor Co. V. Int'l Harvester Co.,* 247 N.W.2d 813, 816 (Mich. 1976).

In addition, "[e]ach of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery." *Id.*

In support of his fraudulent misrepresentation claim, the Plaintiff appears to offer three separate theories that stem from the now-challenged loan transaction. First, he argues that his loan application contained overstated income information which, standing alone, is an act of fraud. In making this argument, the Plaintiff neither denies having signed the application documents which contained the allegedly fraudulent information nor asserts that the Defendant subsequently falsified the content of the document. As such, "there can be no fraud where the means of knowledge regarding the truthfulness of the representation are available to the plaintiff and the degree of their utilization has not been prohibited by the defendant." *Webb v. First of Michigan Corp.,* 491 N.W.2d 851, 853 (Mich. Ct. App. 1992) (citing *Schuler v. American Motors Sales Corp.*, 197 N.W.2d 493, 495 (1972)). Thus, without a contention that the income information was falsified after he signed the document, this theory by the Plaintiff must fail.[6]

Second, the Plaintiff points to advice by the Defendant that (1) the financing scheme, which was ultimately utilized to structure his mortgage, would only be a temporary measure to expedite the loan, (2) he would be able to sell the Brown Drive property or refinance the loan if it ever became necessary. This theory is problematic from a legal view point for several reasons. One, the Plaintiff has failed to identify the person (or persons) who allegedly made these promises as required under Fed. R. Civ. P. 9(b). *See Hoover v. Langston Equip. Assoc. Inc.,* 958 F.2d 742, 745 (6th Cir.1992). Perhaps more importantly, the question is ultimately "whether these statements relate

---

[6] For the first time, the Plaintiff offers a claim of "fraud in the inducement." However, this claim must be rejected for the same reasons that are discussed in this section.

to past or existing facts and are thus actionable, or whether they relate to a future promise or expectation that does not constitute fraud." *Webb,* 491 N.W.2d at 853. With this in mind, the Court has difficulty in concluding that the statements, about which the Plaintiff complains, were nothing more than a promise of a future benefit which cannot, by law, constitute an act of fraud.

Finally, the Plaintiff relies upon an alleged industry-wide conspiracy whereby lenders lull borrowers into accepting loans that they cannot afford and, thereafter, reclaim the property at a later time for a profit. Every plaintiff "must at a minimum allege the time, place and contents of the misrepresentation[s] upon which he relied." *Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir. 1984). Thus, a court may dismiss any claims in which the particularity requirement has not been met. *FFOC Co. v. Invent A.G.,* 882 F. Supp. 642, 658-59 (E.D. Mich. 1994). Although the Plaintiff defends against this "particularity" charge in the context of the theories that have already been disposed of by the Court, he has failed to (1) provide any specific factual allegations with regard to the alleged nationwide conspiracy of fraudulent conduct, (2) indicate how it may have influenced his decision to obtain a mortgage loan or (3) allege that the Defendant made any direct representations to him regarding this point. While the Plaintiff has not offered any response to the Defendant's argument that the claim of negligent misrepresentation should be dismissed, it appears as though this claim is merely a variant of those issues which have been previously analyzed. It appears from a reading of the complaint that the Plaintiff has relied upon an alleged promise by the Defendant regarding the probability of a sale or the refinancing of his home at a future date. However, "[a] promise regarding the future cannot form the basis of a misrepresentation claim." *Forge v. Smith,* 580 N.W.2d 876, 884 (Mich. 1998). Therefore, because the *"*allegations [of] [the] complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should

8

. . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. at 557. Thus, Counts Five and Six are dismissed.

The Court now turns to the Plaintiff's claim of fraud which centers on the Defendant's alleged violation of Mich. Comp. Laws. § 445.1672, commonly known as the Mortgage Brokers, Lenders, and Servicers Licencing Act. Here, the Plaintiff's complaint contains vague and conclusory allegations without any factual predicate which ostensibly support his underlying claim. Moreover, he has not offered anything in his response which would supplement the allegations within the complaint or defend against the Defendant's contention that the claim is ripe for dismissal. Accordingly, the Plaintiff's claim in Count Ten fails for the same reasons which have been discussed above and must also be dismissed.

The Defendant, in its pending motion, has targeted Count Seven for dismissal, contending that the Plaintiff has not asserted an actionable violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 which, arguably, preempts any common-law claims for defamation of credit. In his response, the Plaintiff merely asserts that the Defendant "has made or will make derogatory reports on the Plaintiff's credit reports that are patently untrue."

The Fair Credit Reporting Act places obligations upon three types of entities; namely, (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information to consumer reporting agencies. *Arnold v. GMAC LLC*., 2008 WL 2783255 (W.D. Mich. 2008). A "furnisher" of information is defined as an "entity . . . which transmits information concerning a particular debt owed by a particular customer to consumer reporting agencies." *Carney v. Experian Info. Systems, Inc.,* 57 F. Supp. 2d 496, 501 (W.D. Tenn. 1999). The obligations of a furnisher are set forth in 15 U.S.C. § 1681s-2, which provides two general categories of responsibility: (1) a duty

9

to provide consumer reporting agencies with accurate information; and (2) duties to conduct investigations and report any inaccurate information upon notice of a dispute by the consumer. 15 U.S.C. § 1681s-2(a) & (b).

In order for the Plaintiff to state a viable claim against the Defendant under this statute, there must be proof that the alleged tortfeasor falls into one or more of three regulated groups, to which reference has been made above. However, an examination of the complaint reveals that the Plaintiff has failed to identify (1) the section within the Fair Credit Reporting Act that is applicable to the claimed misconduct, or (2) the group under which the Defendant falls. Assuming, *arguendo,* that the Plaintiff intends to invoke the Defendant's obligations as a furnisher of information, there must be an assertion that he provided the credit reporting agencies with an appropriate notice of the dispute, along with a reasonable time to cure the problem, as required by 15 U.S.C. § 1681s-2(a)(D). A furnisher's liability arises only after it fails to conduct a reasonable investigation after receiving notice from a credit reporting agency. 15 U.S.C. § 1681s-2(b). Thus, in the absence of an assertion that he gave notice of the dispute to the Defendant or the credit reporting agencies, the Plaintiff has not stated a claim under this statute.

Furthermore, the Fair Credit Reporting Act preempts the Plaintiff's state-law defamation claim pursuant to 15 U.S.C. § 1681t(b)(1)(F) which states, in pertinent part, the following: "No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section § 1681s-2, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." *See, e.g., Munson v. Countrywide Home Loans, Inc.,* WL 5381866 (E.D. Mich. 2008). As a preliminary matter, § 1681s-2 only regulates conduct related to the reporting of credit information. Also, the § 1681t(b)(1)(F) preemption

provision "clearly does not apply to . . . tort claims that only involve . . . actions independent of [the Defendant's] function as a furnisher of credit information." *Stafford v. Cross Country Bank,* 262 F. Supp. 2d 776, 787 (W.D. Ky. 2003). The Plaintiff's defamation claim appears to fit squarely within section 1681s-2 as it stems directly from the allegedly inaccurate credit reporting by the Defendant. As a result, the Court must dismiss the Plaintiff's defamation of credit claim (Count Seven).

The Defendant maintains that the Plaintiffs remaining counts, to wit, Counts One, Three, Eight, Nine, Eleven, and Twelve should be dismissed because it contends that none of them are recognized by law or appear to have been based on statutes which do not have any relevance to this case. The Court notes that the Plaintiff only briefly contests the Defendant's allegation as it relates to Count Eleven, and fails to offer any additional support or response to the dispositive motion as it pertains to the other counts.

As to the claim for an accounting, the Defendant argues that the Plaintiff cannot proceed in equity where a remedy at law is available. The law is clear that an "accounting may not be had where the action is for a specific sum due under a contract." *Brown v. Brodsky*, 81 N.W.2d 363, 366 (Mich.1957). Furthermore, "[a]n accounting is unnecessary where discovery is sufficient to determine the amounts at issue." *Cyril J Burke, Inc. v. Eddy & Co. Inc*., 51 N.W.2d 238, 239 (Mich. 1952). Here, the Plaintiff's claims are based entirely on the amount due under the mortgage note which, in essence, is a contract between the parties. In addition, the Plaintiff's complaint does not support an inference that the transaction at issue is so complex that ordinary discovery procedures would be inadequate to discern the amount in controversy. Without a showing of the necessity of invoking the equitable jurisdiction of the Court to order an accounting, this claim must be dismissed.

*See Wilson v. Continental Dev. Co.,* 112 F. Supp. 2d 648, 663. (W.D. Mich. 1999). Count Twelve must also be dismissed for the same reason. The Plaintiff has not shown why he would be entitled to an Temporary Restraining Order or a Preliminary Injunction.[7]

Next, the Defendant submits that the Plaintiff's claim for predatory lending - as found in Count Three - should be dismissed because Michigan law does not recognize a separate and distinct cause of action known as "predatory lending." In support of this proposition, the Defendant cites to a case which uses predatory lending to describe the types of allegations that may be brought by a plaintiff. *Greene v. Benefit Mortgage Corp.,* 2009 WL 56056, at * 1 (E.D. Mich. 2009). While this case could very well be proof that Michigan does not recognize predatory lending as a distinct cause of action, it does not - by itself - support such a conclusion, as advanced by the Defendant. Furthermore, the allegations within this "predatory lending" count appear to be founded in the allegations relating to the fraud and/or misrepresentation issues which have been previously resolved by the Court. Thus, to the extent that this predatory lending claim is merely a repetition of allegations which have already been raised and resolved by the Court under another cause of action, it must be dismissed for the same reasons.

With regard to the Plaintiff's claims for recision and reformation of the mortgage (Counts Eight and Nine), the Defendant maintains that these claims should be dismissed because they are not separate causes of action. The Sixth Circuit Court of Appeals has noted that reformation and recision are "equitable remedies" which are derivative of a plaintiff's claims. *Gore v. El Paso Energy Corp. Long Term Disability Plan,* 477 F.3d 883, 842 (6th Cir. 2007). Nevertheless, in order

---

[7]According to the record, the Plaintiff never filed a motion seeking injunctive relief. He merely listed "Temporary Restraining Order/ Preliminary Injunction" as a cause of action in his complaint.

to utilize the equity power of reformation of the Court, the agreement must be the product of a mistake or fraud which has not been successfully alleged by the Plaintiff. *Petersen v. New York Life Ins. Co.,* 94 F. Supp.2d 828, 832 (E.D. Mich. 2000). Furthermore, his specific request for recision must also be rejected because he has not returned the consideration that was received by him under the mortgage. *See Thomas v. Reece,* 53 N.W.2d 505, 507 (Mich. 1952).

Finally, the Defendant argues that the Plaintiff's claim in Count Eleven for a violation of the usury statute, as found in Mich. Comp. Laws. 438.31, must be dismissed as well because the loan at issue is exempted from the interest rate limitations that were imposed therein. Under this state usury statute, most lenders are generally prohibited from charging interest rates which exceed seven percent ( 7% ) per annum. *See Id.* However, this statute provides an exception to the general rule for those loans that are secured by a first lien on real property by a lender whose business activities are regulated by a state or federal agency. According to Mich. Comp. Laws § 431.31c(2) and (5):

> (2) The parties to a note, bond, or other evidence of indebtedness, executed after August 11, 1969, the bona fide primary security for which is a first lien against real property, or a land lease if the tenant owns a majority interest in the improvements, or the parties to a land contract, may agree in writing for the payment of any rate of interest, but the note, mortgage, contract, or other evidence of indebtedness shall not provide that the rate of interest initially effective may be increased for any reason.
> (5) The provisions of subsection (2) shall apply only to loans made by lenders approved as a mortgagee under the national housing act, chapter 847, 48 Stat. 1246, or regulated by the state or by a federal agency, who are authorized by state or federal law to make such loans.

In *Nelson v. Associates Fin. Serv's Co. Of Ind.,* the court held that "[w]hen these two elements are present, the parties may agree in writing to any rate of interest less than criminal usury (i.e., twenty-five percent)." 659 N.W.2d 635, 641 (Mich. Ct. App. 2002). *See also,* Mich. Comp. Laws. 438.31c(4). Here it is undisputed that the parties agreed in writing to an interest rate of 8.875% annually. The Plaintiff maintains that the statutory scheme should not apply because the

13

agreement was the product of fraud. While the Plaintiff has not offered any case law to support this proposition, the Court has previously found his fraud claim to be without merit. As such, the Plaintiff's claim under the Michigan Usury Act must also fail.

V.

Accordingly, for the reasons that have been stated above, the Court grants the Defendant's motion for dismissal of the complaint. However, the Defendant's application for attorney's fees is denied because (1) it has not provided the Court with any support for such a request and (2) the imposition of this type of sanction would be inappropriate under the circumstances of this case.

IT IS SO ORDERED.

Dated: September 30, 2009      S/Julian Abele Cook, Jr.
    Detroit, Michigan      JULIAN ABELE COOK, JR.
     United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 30, 2009.

     s/ Kay Doaks
     Case Manager